Paul D Orlandi Plaintiff Appellee vs. Leavitt Family Limited Partnership in Tomah & Associates Defendants Appellants Oral Argument Not to Exceed 15 Minutes per Side Mr. Tomah for the Appellants you may proceed. Good morning your honor. Good morning. May it please the court my name is Timothy Tomah and I'm the attorney for Leavitt Family Limited Partners and also for Tomah & Associates. I've reserved three minutes of my time for rebuttal. All right. I think the crux of this case can be summarized in the language that the trial court utilized in its July 8th 2017 ruling in denying the defendant's motion for summary judgment in which the court stated the personal guarantee that Mr. Orlandi signed pre-petition was discharged in his chapter 7 case and was not renewed or reestablished by Mr. Orlandi when he signed the lease extension. I would submit and we would submit that that issue as to whether or not that lease extension operated to renew Mr. Orlandi's personal obligations as a guarantor in a party under the lease were issues that should have been decided and should be decided ultimately in the state court in which the action was brought not by the bankruptcy court. Let us suppose for a moment there never had been a bankruptcy and the issues in this fact aren't I mean the facts in this case really aren't in any type of significant dispute at all. We know that Mr. Orlandi signed a lease as Studio 26 Inc. in 2005, signed as a personal guarantor. 2008, files a personal bankruptcy. At that point he was current on his lease. There were no issues with the lease under Studio 26, no reason to enforce the personal guarantee. No issues arose under that initial lease. 2011, three years after Mr. Orlandi's bankruptcy, the lease expired. So they signed a lease extension. Mr. Orlandi signs the lease extension which incorporated all of the terms of the original lease which included language that he was the personal guarantor and that he was a party to the lease. Is it your position that the obligation under the lease was material to the renewal in 2010? are what we are agreeing to today. And that's exactly what the issues that were presented before the state court before this matter was brought before the bankruptcy court. Suppose for a moment that Mr. Orlandi had never filed bankruptcy in 2008 and we had filed suit based on the extension in 2011. Mr. Orlandi would still be making the same arguments he's made here today. I'm sure his counsel would be raising the same arguments that he only signed it as a corporate officer and he's not bound by the personal guarantee, so on and so forth. Do I wish my client had Mr. Orlandi sign a separate document that said personal guarantee in 2011? Sure I do, but he didn't. So the question that's ultimately to be decided by the state court is his signing of that lease extension in 2011, did it bind him personally or did it not? Does it guarantee the sole basis on which your client is suing? Actually, no. There are other bases as well. And this was brought out in the trial as well, that actually two weeks after the lease extension was signed, the entity Studio 26 ceased to exist. Its charter was canceled by the state of Ohio by failing to pay its franchise tax. So Studio 26, during all of the period of time that these charges accrued, didn't even exist. Well then who's liable? Studio 26 doesn't exist anymore. Somebody was still there. Somebody was still operating. That somebody was Mr. Orlandi. But again, those are all issues that should be ultimately decided by the trial court, the state court. As the Tenth Circuit pointed out in the case of Paul v. Engelhardt, the limited question for the bankruptcy court in the proceedings under 524A2 is whether the claims asserted in the case fall within the discharge injunction, i.e. alleged pre-petition or post-petition conduct. And whether the claims can be proven is a question for the state court in which they are litigated. There's no question. I think the complaint is clear. In fact, there was an amended complaint that was pending when these proceedings started that it was based upon and on the execution of the extension in 2011. And all of the charges that arose were from that extension. We're not looking for any debt that was owed prior to 2008. In fact, nothing that was owed prior to 2011, for that matter, it was actually 2015 when these debts incurred. The trial court in this case indicated that allowing Mr. Orlandi's guarantee to be enforced at this point would be violating the fresh start provisions envisioned by 524, the bankruptcy code. We would respectfully disagree with that in that Mr. Orlandi got his fresh start. His debts from prior to 2008 and obligations were discharged. And he had a new start. And he signed a new lease extension. And we contend, and that's an issue that ultimately decided, that he incurred personal liability by signing that lease extension in 2011. All of the charges were incurred then. A fresh start does not equate to a discharge in perpetuity because that's actually what Mr. Orlandi is looking for. He thinks that his discharge in 2008 not only discharged him of his debts and obligations prior to that point, but on into the future as well. And that is not what the fresh start provision is intended for. And we would submit that, again, that's an issue that the court should defer to the state court proceedings on and should not have undertaken to make that decision as well. Is it fair to say that there were several bases for holding him liable in the state court proceedings? One, the guarantee. Correct. Two, the lease, even though he signed as president, you would argue that he could, you could argue to the state court that that didn't give him the principle of limited liability. That's correct. And then were you suing for occupancy as opposed to under the lease, you know, privity of the state as opposed to privity of contract? Because, I mean, what exactly, you said, what exactly was your theory of claim? Well, primarily was the guarantee that he, by signing the extension, that he did personally guarantee it. But also the fact that under the lease, he's listed as a lessee under the lease. He's also listed as the guarantor under the lease. And also the fact that the entity, Studio 26, ceased to operate, ceased to exist within two weeks after the lease was signed. Somebody was still there. It wasn't Studio 26. So based on that and whether it would be a quantum merit or a contractual type of a theory, in either event, it's our contention that Mr. Orlandi at that point was personally on the line for those obligations. And for how long were the premises occupied after the corporation was dissolved? I'm sorry to interrupt, but I don't understand. You have what sounds to me like really great state court actions based upon the lease as Mr. Orlandi's individual right. Why fuss with the guarantee? Because it seems like that makes it more complicated and perhaps does open you up to the bankruptcy discharge. Why not just go straight up? You're the lessee and you didn't pay and you committed waste. Why not just go at it that way? Actually, we were very in the pleading stages of the proceedings in state court. And obviously you bring every claim that you think might be viable. I wouldn't want it to have waived that potential in case the court were not to find, for whatever reason, that he was liable under the lease. But regardless, he would have been liable for transactions and occurrences, everything that occurred post-petition.  As a lessee and as a guarantor, either way. See, by bringing them in as a guarantor without this individual new guarantee, you actually do perhaps get yourself in trouble with the bankruptcy court. Well, obviously we did get ourselves in trouble. And perhaps in 20-20 hindsight we might have reconsidered that. But that's what we did. And we would submit that what we did is valid and that they are valid claims under the personal guarantee and that they're not discharged by the bankruptcy. And in fact, actually one of the things that the trial court noted as well is that in fact there's a split of authority as to whether or not Mr. Orlandi's 2008 bankruptcy discharged his obligations as a guarantor even under the 2005 lease. Now, I would submit that all of the cases that were either for or against all pertain simply to a pre-petition guarantee. Whereas the difference here in this case is that there was a post-petition affirmation, ratification, whatever you might want to call it through the extension of that lease. None of those cases dealt with that. But regardless, even the trial court noted that there's a split of authority on the issue as to whether or not that obligation was discharged. The trial court, and I believe this court, can reconsider that issue as to whether or not that is true or not. But regardless, I think that goes to essentially the willfulness aspect of the contempt proceedings or this action. Speaking of the willfulness, how does the Supreme Court's opinion in Taggart affect your liability? That I'm not sure. I'm not familiar with Taggart. Taggart talks about a different standard for willfulness. You need to be familiar with that. Okay. I would submit, though, that primarily in this instance we have a split of authority. It's not a clear issue. It's not a clear-cut issue. So there was no willful violation. Otherwise, we'd be freezing any attempt to litigate any issues where there might be any legitimate issue involved in the case. Where there's a split of authority and it's not a clear matter of clear legal law, we would submit that it should not be considered to be a willful violation. That's kind of what Taggart gets to. I agree with that. Are you arguing that the bankruptcy court didn't have authority to rule on at least the aspect of the controversy involving the guarantee? Correct. We believe that that was clearly a matter for the state court proceedings. Inclusive jurisdiction of the state court to construe the scope of the federal court's injunction? At least with regards to a discharge proceeding. I can't speak to any other action that might be. But with regards to these particular proceedings, the bankruptcy court was limited to looking at were the allegations, were the claims brought alleging pre-petition or post-petition conduct. It's clear. And whether or not we ultimately prevail on those issues or not will be for the state court to determine. Not for the bankruptcy court. I see my time has expired, Your Honors. I'll be back for rebuttal. Good morning, Your Honors. Good morning. If it pleases the court, I'm Attorney Fred Lenhart. I'm here on behalf of the debtor, Paul Orlandi, who is the plaintiff at Pele in the case. Mr. Orlandi, just by way of a brief background, he's a hairstylist. He's been in that trade for 30 years. When he opened his own hair salon, he formed a corporation called Studio 26, Inc. He leased a commercial storefront space from Leavitt Family Limited Partnerships through its managing partner, Douglas Leavitt. Mr. Leavitt testified that he's the managing partner since 2004, since his father passed away, and he's the one in charge of the leases. Leavitt also operates a dentist office, which is side-by-side to the commercial space that's the hair salon. Your Honors, Orlandi has asked the bankruptcy court, the trial court, to decide a threshold issue here. Did his 2008 Chapter 7 discharge, did it discharge his personal guarantee of a corporate debt? Now, if this is answered in the affirmative, then we never get to the questions of state law, of state common law regarding contract formation and such that Leavitt raises. Now, if the personal guarantee is discharged, if it discharged his corporate obligations, then the discharge, the personal guarantee is moot. It ceases to function as an instrument. It can't be resurrected. It can't be overcome by language that says bankruptcy doesn't apply. Those are the central arguments that appellant made in the trial court. Does that then absolve him of liability under a separate theory? For example, under the lease, or for committing waste, or quantum meriwit, or privity of estate, etc., for occupying the property? Does that give him a free pass for those other theories of claim? I wouldn't characterize it as a free pass because Orlandi was sued on the guarantee because there was no privity of contract with Orlandi. They should have sued the corporation, but they sued Orlandi personally. If you think about it, the lease was extended by the corporation. He signed in his corporate capacity. The corporation was valid at that time. Then what happens after the corporation is dissolved? The corporation was only, it was, the articles were canceled for failure to pay the franchise tax, but it's still a de facto corporation. That doesn't just eliminate the corporation. It could be reinstated in full upon payment of the franchise tax. If you think about it, a corporation is still, when a corporation, when the articles are canceled, it still exists for purposes of winding down and dissolution. So the state recognizes the corporation. They just classify it as a de facto corporation. So Mr. Orlandi could walk in, pay that franchise tax, and boom, he has a corporation that exists, still exists. The only reason he would resurrect it would be to simply dissolve it at this point. When they filed their state court complaint, remember they didn't sue the corporation who they should have really sued. Because that's the entity that the lessor had privity with. The lease extension signed by the corporation, signed by the landlord. That's the contract. You're dragging in Orlandi. That's why when you look at the state court complaint, they focus on that guarantee language. Because how else do they have privity with Mr. Orlandi, the individual, when the contract was with the company? So what would a landlord's attorney do? Because you have an entity here that's no longer active. It's dissolved. So you're suing a dissolved corporation. It's not dissolved. Sue the corporation. It's a de facto corporation. And there you go. Does sue the corporation? Where do you go? I'm a little unclear on that. A lot of times it's found that a corporation could end up being an empty shell that has liabilities, but that's all it has. That's a common everyday occurrence. That's why we have the corporate protection. It's not a situation, I think, where you... And this wasn't even alleged below in the state court complaint. It's a one-count complaint. It's part of the bankruptcy court record, the complaint. Not in the amended complaint. If you look at the record in the bankruptcy court on this record on appeal, you have just that one-count complaint. The complaint may have been amended at a later time, but it's never part of this record. And I can assure you that when you look at it, when you look at the record on the appeal here. So that's all they have. They have one count, and they're pleading against the individual. In his individual capacity, not in his corporate capacity. I think the court correctly ruled that you take away... that's the threshold. If you look at that personal guarantee, he guaranteed a corporate debt. You have people that co-sign car loans in bankruptcy, co-sign a residential lease for a daughter or something. That happens a lot. Now, you don't see these people being turned around and expecting to have that obligation carry on. They filed a bankruptcy to rid themselves of that contract, of that co-signing, of that obligation. But here you arguably have a new obligation in the form of the lease renewal, correct? But you have a lease renewal between the corporation and the lessor. Not anybody signing in an individual capacity. So it would be different if at the time the lease was renewed, Levitt says, you know what? We want to have a new lease, and we also want to have a guarantee. That would have been a completely different issue, Gary, than you think? Well, I think Erlandy walks in my office at that point, and I'm like, well, you know, you got this guarantee here. We could fight this thing out in state court, but I don't have any defenses. I mean, when we filed a response in state court, we had to list as an affirmative defense, discharged in bankruptcy. And we submit that the appropriate forum would have been for Levitt, for Toma, to look at this. They were on notice to go to bankruptcy court and say, hey, is this a dischargeable claim or not? I mean, that would have been the appropriate steps. Is it conceivable to find a violation of the discharge injunction but not find it contemptuous? Yeah, I think there's case law on that. I don't think that's the case here, though. How do you reconcile the willfulness requirement with Taggart in this case? Yeah, here's how I reconcile it. I think in Taggart, you know, I understand where Taggart... It'll help me if I just quickly summarize Taggart. So in Taggart, I think, as we know, it abandoned this idea of a subjective test, okay, where, you know, what's in the creditor's mind? Why did they think they were doing the right thing? That was the Ninth Circuit test that Taggart rejected. But Taggart also had a problem with this so-called strict liability way that the lower, the trial courts generally look at stay and discharge violations. So I think, though, you know, when these matters are on appeal and when these matters are now before trial court judges, they're still going to look at that initial analysis, that sort of, you know, so-called strict liability analysis, was the creditor on notice, what did the creditor do, you know, that. And then I think you overlay that with the Taggart notion that, you know, let's step back a minute and see if the creditor acted... I have the language, if the creditor acted, like, within, you know, reasonably, if they acted objectively, if the creditor acted objectively in the steps they took and if it was lawful. But my response to that is, in this case, there really was no law that they supported in their briefs. There's no law supporting their arguments. So how could you claim that you're acting lawfully if you don't have law to point to or statutes to point to that say you are within the law? There's a split of authority about the discharge of guarantees, isn't there? There, there, there's...I wouldn't, you know, you could call it a split, but because some of the cases deal with fairly complicated issues. You have things like, you know, businesses borrowing from banks, pre-discharge, then post-discharge, and consolidating loans, and there's some language like that that's confusing. I think this falls right smack in the center of those easier type cases, where it's typically a business, somebody had, say, a business had a open-ended...escapes me now...an agreement to buy products, you know, ongoing. And so then, and this is kind of like a case like that, where so the entity, the business guarantor, files bankruptcy. His company still continues to borrow, say, lumber or whatever, on an ongoing basis. Okay, and then there's a problem later, and there's a lawsuit, and they want to sue the...borrow the company for that borrowed lumber. They want to sue the individual, and the individual says, hey, wait a minute, you know, I discharged this in my earlier bankruptcy. And there's cases that fall flat on that side of the debtor there, like, yeah, that's the reason this debtor sought bankruptcy relief, you know, to discharge this contract. And so then they have to take this obligation under the contract. And I think this is a similar situation. It's not that complicated. It's a lease guarantee, you know, it could be a lease guarantee for, you know, somebody's apartment or a co-signed loan. You know, that party has now filed bankruptcy, and they've made the guarantee, the co-signing, you know, moot. It no longer exists as an instrument. I think it falls on the simple side of that equation as far as some of the split of authority. And I think that's why, you know, if we're talking about contempt and things, the creditor had more or less had an obligation to seek that, to find that issue out from the bankruptcy court. Instead of just, you know, going in there, you know, guns blazing like the bankruptcy doesn't apply to us. Yeah. So, apply to this case, the levitt files its lawsuit in the state court, you file a defense of discharge, right then and there, levitt should have said, let's put this on hold and go to the bankruptcy court and find out whether this is under the discharge injunction or not. Is that the proper action? Yes, I would say, or go to bankruptcy court before you even start incurring state court, you know, expenses and time. I'm trying to figure out, you know, so what's a lesson from this case, because we like to have lessons, I guess. So, what should have happened here? Clearly, there's a great relationship between Studio 26 and levitt because the lease is being paid, it gets renewed in 2010, 2011, but then the wheels fall off the buggy later on. Should levitt have gotten a new guarantee when it renewed that lease? Because I'm kind of trying to find out what would a landlord do? They've got a good tenant, they want to keep that tenant, but if the individual filed bankruptcy, do they have to throw this person out because they can't have a guaranteed obligation? They want that guarantee and they probably should have the guarantee. How do they approach that problem? They sign a new guarantee, I would think, a new guarantee post-bankruptcy. Even though you have an existing lease that's just merely being renewed. I'm trying now to figure out the distinction between a lease and a revolving line of credit goes down to nothing after the case has been filed, a discharge given, and then goes back up. Where do you draw the line there? If you can. I'm not sure where you draw the line there exactly. Okay. So where is it so clear? I'm not too sure it's so clear, but that's just one judge's view. It looks like you're running out of time. The debtor appellee is requesting that this Honorable Court affirm the trial's court's decision that won the 2008 bankruptcy discharge to the personal guarantee, that both appellants willfully violated the discharge injunction, and that the award of fees and costs were appropriate and not an abuse of discretion in this case. Thank you. Yes, sir. Thank you, Your Honors. Just a couple points on rebuttal. The appellee argues or presents that really the sole issue that's to be determined is whether or not the bankruptcy in 2008 discharged Mr. Orlandi's applications as a personal guarantor under the 2005 lease. We submit that that's missing the point on this case entirely. If we were dealing simply with the 2005 lease, then yes, I would agree 100 percent, but we are not. We are dealing with a 2011 lease that was reissued by or re-signed by Mr. Orlandi in 2011. Regardless of how, and actually the court will have the opportunity to address that issue in this case as to whether or not the discharge applies to a personal guarantee. But regardless of how this court decides, those issues as to whether or not Mr. Orlandi is liable under the 2011 lease extension are still going to be raised in state court. Let me ask you this. Under the bankruptcy court's decision, are you free to go back to state court and not say a word about the guarantee and sue under the lease? Under these circumstances, I probably would take great pause, just based on the litigation posture of that. I don't know, we'd have to think through that, whether or not we would even bother with that. And the amount of controversy, I suppose. Actually, the amount of controversy has gotten to be considerable with the damages that were done. But the money is there, but whether or not, it would be more of a practical decision that would have to be evaluated between me and my client, whether or not it would be worthwhile to do that. I think we would legally have viable claims under those alternate theories. It would be speculative for me at this point. But the point being is that, again, all of those issues, regardless of Mr. Orlandi's personal liability as to the 2011 lease modification, will be an issue that will need to be litigated in state court, regardless of whether or not his bankruptcy in 2008 discharged that personal guarantee under the 2005 lease. If we were suing him under the 2005 lease, one, we wouldn't have filed the suit. And if we did, then we probably would have a very good claim, not only for the contempt, but for the willfulness. But we didn't. We sued based on a 2011 lease extension. Whether or not we prevail on that or not will be for the state court to determine. And certainly, and even if this court were to decide that, hey, you shouldn't have done it, you were discharged, it certainly was not a willful violation. We think the area of the case law is sufficiently unsettled that we had a reasonable basis for seeking and attempting to do that. Thank you, Your Honors.